**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| DAVID BOHM, | ) | |
| | ) | Civil Action No. 12 – 16J |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Judge Gibson |
| | ) | Chief Magistrate Judge Lenihan |
| MELISSA STRAW, *et al*., | ) | |
| | ) | |
| Defendants. | ) | ECF Nos. 27, 34, 41 |


## REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 27) be granted, that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 34) be denied, and that Plaintiff's Motion to Amend/Correct Complaint (ECF No. 41) be denied.

### II.      REPORT

David Bohm ("Plaintiff") is an inmate currently confined at the State Correctional Institution at Cresson ("SCI-Cresson"). He initiated this action in February 2012, by filing a prisoner civil rights complaint pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. (ECF No. 5.) He named as Defendants Dorina Varner (Chief Grievance Officer for the Pennsylvania Department of Corrections) and the following employees of SCI-Cresson: Melissa Straw (Mailroom Supervisor), Rebecca Reifer (Grievance Coordinator), and Kenneth Cameron (Facility Manager). After Defendants filed a motion to dismiss the Complaint, Plaintiff filed an Amended Complaint on June 6, 2012. (ECF No. 29.) Plaintiff alleges that Defendants violated

his rights under the First and Fourteenth Amendments to the United States Constitution in connection with the confiscation of a dictionary. Defendants have filed a Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 27) and Plaintiff has filed a response in opposition to the Motion (ECF No. 30). The Motion is now ripe for review.

## A. Background

On September 7, 2011, Plaintiff's mother ordered a copy of *Webster's Encyclopedic Unabridged Dictionary of the English Language* (hereinafter referred to as "the dictionary") through amazon.com. (ECF No. 29 at ¶ 8.) The dictionary was sold by and shipped directly to Plaintiff from a company named "Goodwill Industries of the Heartland." Id. It arrived at SCI-Cresson on September 12, 2011. Id. at ¶ 9.

Defendant Straw, the mailroom supervisor, inspected the dictionary upon its arrival and declared it contraband pursuant to the Pennsylvania Department of Corrections policy regarding Outside Purchases, DC-ADM 815 (hereinafter referred to as "the policy" or "DC-ADM 815"). Id. at ¶ 10. Specifically, the policy forbids inmates from purchasing from outside sources items that are available through the Commissary. (ECF No. 27-2 at 9-11.[1]) Defendant Straw sent a notice informing Plaintiff that the dictionary was considered to be contraband under the policy and informed him that he would have the opportunity to return the book to the shipper, Goodwill Industries. (ECF No. 29 at ¶ 10; ECF No. 5-1 at 4; ECF No. 28 at 1-2.)

Plaintiff disputed the confiscation in request slips he sent to Defendant Straw and to Superintendent Defendant Cameron claiming that the dictionary met the Pennsylvania

---

[1] Although Plaintiff did not submit a copy of this policy, it is clearly referenced throughout Plaintiff's Amended Complaint and in the exhibits he submitted in support of his original Complaint which he has incorporated by reference. *See* (ECF No. 5-1 at 4-6, 14, 16, 19.) Accordingly, Defendants have submitted the relevant portion of the DC-ADM 815 policy. (ECF No. 27-2 at 9-11.) The Court should consider this document in support of Defendants' Motion to Dismiss because it is an undisputedly authentic document on which Plaintiff's claims are based. *See* Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Department of Corrections policy concerning incoming publications, DC-ADM 803, as coming from an acceptable original source. (ECF No. 29 at ¶ 9; ECF No. 5-1 at 5-6.) Defendants Straw and Cameron responded that the dictionary was confiscated pursuant to DC-ADM 815, which did not permit inmates to order items that were available through the Commissary. (ECF No. 5-1 at 5-6.) Plaintiff also filed a grievance (#380950), which was denied by Defendant Straw pursuant to DC-ADM 815; the dictionary could not be obtained via an outside purchase because dictionaries were available for purchase in the Commissary. Id. at 11-14. Plaintiff appealed to Defendant Cameron who denied the appeal, upholding Defendant Straw's response. Id. at 15-16. Plaintiff's final appeal was denied by Defendant Varner on November 18, 2011. Id. at 17-19.

On December 2, 2011, the Pennsylvania Department of Corrections amended DC-ADM 803 (effective December 23, 2011) to reflect that incoming publications would not be considered outside purchases under DC-ADM 815 unless they could be obtained from the facility library. Id. at 28-29; (ECF No. 27-2.[2]) This eliminated the previous Commissary restriction. (ECF No. 27-2 at 4.) Believing that the policy change supported his right to the dictionary, Plaintiff attempted to re-appeal Defendant Varner's final decision issued on November 18, 2011. (ECF No. 5-1 at 30.) This appeal was denied on January 9, 2012, because Plaintiff had already received a final disposition of the issue. Id. at 31.

## B. Legal Standards

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.

---

[2]    Defendants submitted a complete copy of the policy change notice because the copy submitted by Plaintiff was missing pages.

554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Ashcroft v. Iqbal</u>, 129 S. Ct.1937, 1949 (May 18, 2009) (citing <u>Twombly</u>, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

<u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556-57).

In <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing <u>Twombly</u> in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of <u>Twombly</u> and <u>Iqbal</u> as follows:

> After <u>Iqbal</u>, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. at 1948. The Supreme Court's ruling in <u>Iqbal</u> emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* <u>Id</u>. at 1949-50; *see also* <u>Twombly</u>, 505 U.S. at 555, & n. 3.

<u>Fowler</u>, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test

to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. [Iqbal, 129
> S. Ct. at 1949]. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." Id. at 1950. In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an
> entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the
> Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not 'show[n]'-
> 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.
> This "plausibility" determination will be "a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other

matters of which a court may take judicial notice, court orders, and exhibits attached to the

complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and

Miller, Federal Practice and Procedure: Civil 2d, § 1357; Chester County Intermediate Unit v.

Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider

indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension

Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v.

Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of

which they may take judicial notice, including records and reports of administrative bodies, and

publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## C. Discussion

Plaintiff claims that Defendants have violated his rights under the First and Fourteenth Amendments to the United States Constitution. Specifically, he claims that Defendants' application of DC-ADM 815, which allowed them to confiscate his dictionary, violated his right to freedom of speech under the First Amendment. He further claims that he had a property and liberty interest in the dictionary and that Defendants violated his right to due process under the Fourteenth Amendment by denying him a hearing prior to its confiscation.

**1.    Defendants should be granted qualified immunity on Plaintiff's First Amendment claim.**

Defendants maintain that they are entitled to qualified immunity because under clearly established law in 2011 it was not apparently unlawful to confiscate the dictionary pursuant to DC-ADM 815, the Commissary rule.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The defense of qualified immunity involves a two-step inquiry: (1) whether the facts alleged establish a violation of a constitutional right, and (2) whether the right was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 200-01 (2002). "Qualified immunity applies unless the official's conduct violated such a right." Pearson, 555 U.S. at 224 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

When ruling on qualified immunity, judges may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. 223, at 236. The Court in Pearson was concerned that the rigid Saucier procedure "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case . . . [and that] unnecessary litigation of constitutional issues also wastes the parties' resources." Id. at 236-37. The Court was specifically concerned about "cases in which it is plain that a constitutional right is not clearly established but [it is] far from obvious whether in fact there is such a right." Id. at 237.

To avoid unnecessary litigation, Defendants assert that the Court should first consider the second prong of the qualified immunity analysis. The undersigned respectfully recommends that

for the reasons articulated below, the facts alleged in the complaint are plainly insufficient to show a violation of a clearly established constitutional right at the time of the alleged violation. Consequently a <u>Turner</u> style inquiry into whether there was a violation of a Plaintiff's First Amendment right would not affect the case's ultimate outcome, and would needlessly increase the parties' litigation costs and delay the disposition of the case. This was the precise concern articulated by the Court in <u>Pearson</u>. As such, the undersigned will first address the second prong.

"'[C]learly established rights' are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>McKee v. Hart</u>, 436 F.3d 165 (3d Cir. 2006) (citing <u>McLaughlin v. Watson</u>, 271 F.3d 566, 571 (3d Cir.2001)). "It is important to emphasize that this [clearly established] inquiry 'must be undertaken *in light of the specific context of the case,* not as a broad general proposition.'" <u>Hart</u>, 436 F.3d at 171 (quoting <u>Saucier</u>, 533 U.S. at 201) (emphasis added). "Put another way, 'there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited.'" <u>Id</u>. at 171 (quoting <u>McLaughlin</u>, 271 F.3d at 571). "His very action need not previously have been held unlawful, but in the light of pre-existing law its unlawfulness must be apparent." <u>Wilson v. Layne</u>, 526 U.S. 603, 604 (1999). Accordingly, the question before the Court is whether clearly established law in effect September 2011 made it apparent or gave fair warning to Defendants that their conduct was unlawful. Defendants assert that the answer is no.

Plaintiff challenges the confiscation of his dictionary, purchased by his mother through amazon.com and sent to him from Goodwill Industries of the Heartland. As noted *supra*, the dictionary was confiscated pursuant to DC-ADM 815, which prohibited inmates from receiving items from outside sources when those items were already available for purchase in the

Commissary. Defendants assert that they have been unable to locate any court decision that invalidates a prison policy prohibiting inmates from making outside purchases when those items are available through the Commissary. Indeed, the undersigned has been unable to locate any such case as well. However, Defendants have identified a case where a virtually identical policy was found to pass constitutional muster.

In Golden v. Raemisch, No. 09-CV-442-BBC, 2010 U.S. Dist. LEXIS 80130, 2010 WL 3123133 (W.D. Wis. Aug. 9, 2010), the plaintiff challenged an individual prison policy that prohibited him from purchasing a dictionary from outside the prison because a pocket-sized dictionary was already available at the prison Canteen. Id. at *1. The prison had a policy, similar to the one at issue, that prohibited prisoners from purchasing items from outside vendors if "like or similar" items were available at the prison Canteen. The court conducted a Turner analysis[3] of the policy and ultimately concluded that the policy was a rational way to limit contraband in the prison. Id. at *5.

Plaintiff attempts to distinguish Raemisch by asserting that, unlike Wisconsin, Pennsylvania has an "original source" (a.k.a. "publisher-only") rule for publications that contradicts and supersedes the Commissary rule. Plaintiff is incorrect. When Raemisch was decided in 2010, the Wisconsin Department of Corrections in fact had a "publisher-only" rule, which stated that "[i]nmates may only receive publications directly from [the] publisher or other recognized commercial sources in their packages." Id. (citing Wis. Admin Code § DOC 309.05(2)(a)). The Wisconsin publisher-only rule was discussed in the district court's opinion.

---

[3]     Pursuant to Turner v. Safley, 482 U.S. 78, 89 (1987), a prison regulation that limits an inmate's constitutional rights is valid as long as it is reasonably related to legitimate penological interests. To determine the reasonableness of the prison regulation, courts examine four factors: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) whether accommodation of the asserted constitutional right will have negative effects on guards, other inmates or prison resources; and (4) whether there are obvious, easy alternatives available at a *de minimis* cost. Turner, 482 U.S. at 89-91.

Indeed, the plaintiff in <u>Raemisch</u> argued that the Canteen and the publisher-only rule contradicted in the same manner that Plaintiff in the instant case alleges that the Commissary and original source rule allegedly conflict. The <u>Raemisch</u> court rejected the argument because the publisher-only rule merely imposed a prohibition against receiving publications from certain sources. <u>Id</u>. The rule did not create a "right" for a prisoner to receive any book so long as it comes from a publisher, and the plaintiff could "point[] to nothing in the statutes or regulations that forbids officials at individual prisons from imposing additional rules beyond those required by the Department of Corrections." <u>Id</u>. The court further stated that even if the policy created a right it would have been a state right and the only question was whether the defendants violated plaintiff's First Amendment rights. <u>Id</u>. In the instant case, Plaintiff's argument fails for the same reasons.

In the instant case, Plaintiff has identified two sources for the Pennsylvania original source (publisher-only) rule: 37 Pa. Code § 93.4(b) and § 93.2(g). (ECF No. 30 at 5.) In Pennsylvania, purchases for inmates by family and friends must be shipped directly from the vendor. *See* 37 Pa. Code § 93.4(d). Publications are subject to additional restrictions found at 37 Pa. Code § 93.2(g). *See* Pa. Code § 93.4(b). Section 93.2(g) imposes the requirement that publications "shall be received directly from a publisher, bookstore, book club, distributor or department store." *See* 37 Pa. Code § 93.2(g).

Plaintiff alleges that the commissary rule as applied to publications contradicts his right to receive the dictionary under the original source rule found in the Pennsylvania Code because there is nothing in the Code to bar the receipt of publications if they are sold through the prison commissary. However, the undersigned finds that there is no apparent conflict between these sections of the Code and DC-ADM 815. Like the Wisconsin publisher-only rule, the

Pennsylvania original source rule does not create a right to receive any book so long as it comes from a publisher. It imposes only a *prohibition* against receiving publications from certain outside sources. Moreover, nothing in 37 Pa. Code § 93.4 or § 93.2 operates to create a right, and such a construction is expressly prohibited. "This section is not intended and may not be interpreted to create or confer any rights in addition to those created by the United States Constitution, the Pennsylvania Constitution or Federal or State statutes applicable to the Department." 37 Pa. Code § 93.2(j). Furthermore, there is nothing in the Code that forbids prison officials from adopting more restrictive rules.

Even if these sections of the Code operated to create such a right, they would create a state right pursuant to state law. The Plaintiff has no cause of action under Section 1983 for violations of state law, without any associated violation of a federal statutory or constitutional right. "Section 1983 does not provide a cause of action for violations of state statutes, and, as the district court observed, a state statute cannot, in and of itself, create a constitutional right." Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990); *see also* Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004).

As Defendants correctly point out, the policy at issue in this case did not involve the denial of, or prohibition against, a category or broad range of publications. Rather, the policy addressed the source or method of purchasing items, including publications. Defendants have identified several similar cases where courts have upheld the lawfulness of prison policies with related restrictions on the purchase of publications by inmates under Turner. *See* Bell v. Wolfish, 441 U.S. 520 (1979) (upholding prison policy prohibiting inmates from receiving hard-cover books that were not mailed directly from publishers); Heleva v. Kramer, 330 F. App'x 406 (3d Cir. 2009) (upholding Pennsylvania prison policy only accepting books shipped directly

from publishers or containing the publisher's invoice); <u>Massi v. Hollenbach</u>, No. 4:06CV34, 2008 U.S. Dist. LEXIS 60463, 2008 WL 3074478 (M.D. Pa. Aug. 1, 2008) (upholding BOP policy that inmates only receive soft-cover publications from the publisher, a book club, or a bookstore).

Clearly established law in place as of September 2011 does not demonstrate that the policy at issue in this case, prohibiting outside purchases of items if they are available through the Commissary, or the Defendants' application of that policy, violated the First Amendment. The undersigned finds unpersuasive Plaintiff's arguments that Defendants should have known the policy in question was unlawful because of broad, general principals of liberty, limited government and property rights. (ECF No. 30 at 6.) The question in a qualified immunity analysis is not based upon conceptual political philosophy but rather the specific precedent in place at the time of the alleged violations in actions factually similar to the plaintiff's that would put the defendants on notice that their conduct was prohibited. The clear answer in this case is no. As such, the undersigned recommends that Defendants' Motion to Dismiss be granted on the basis that they are entitled to qualified immunity as to Plaintiff's First Amendment claim.

**2.     Plaintiff fails to state a due process claim.**

Plaintiff contends that he had a constitutionally protected liberty and property interest in the dictionary of which he was deprived without due process of law, specifically a pre-deprivation hearing.

"The core of due process is the right to notice and a meaningful opportunity to be heard." <u>LaChance v. Erickson</u>, 522 U.S. 262, 266 (1998). In analyzing any procedural due process claim of this type, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." <u>Shoats v.</u>

Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)).  Once it is determined that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it.  Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  The threshold question presented by Plaintiff's claim is whether Defendants' actions impacted a constitutionally protected liberty or property interest.

### a. Liberty Interest

A liberty interest may arise either from the Due Process Clause itself, or from a state statute, rule, or regulation.  *See* Hewitt v. Helms, 459 U.S. 460, 466 (1983) (citing Meachum v. Fano, 427 U.S. 215, 223-27 (1976).  A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process.  Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).  Interests recognized by the Supreme Court that fall within this category include revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778.

The Supreme Court has stated that "prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests."  Hewitt, 459 U.S. at 467.  In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees.  Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 483.

Plaintiff's argument that he had a protected liberty interest in the knowledge contained in the dictionary is unpersuasive. Plaintiff cites Meyer v. Nebraska, 262 U.S. 390 (1923), in support of his position. The Meyer Court stated that individuals have a liberty interest in the right "to acquire useful knowledge." Id. at 399. However, that case concerned only "access to broad areas of knowledge, not with maximizing the volume of knowledge to which an individual is exposed." Student Roe by Roe v. Comm. of Pa., 638 F. Supp. 929, 932 (E.D. Pa. 1986), *aff'd sub nom.* Roe v. Comm. of Pa., 813 F.2d 398 (3d Cir. 1987) (internal citations removed). By contrast, Plaintiff alleges that he was denied access to the dictionary of his choice and not to "useful knowledge." As such, the liberty interest discussed in Meyer is not implicated. Moreover, it is clear that Defendants' conduct at issue did not deprive Plaintiff of any cognizable constitutionally protected liberty interest. As such, Defendants' Motion to Dismiss should be granted in this regard.

### b. Property Interest

Plaintiff maintains that he had a property interest in the dictionary and that he was deprived of his property interest without due process of law. Specifically, he contends that he was entitled to a hearing prior to the dictionary being confiscated. Notwithstanding the fact that inmates do not have a property interest in items classified as contraband *per se*, Miller v. DiGuglielmo, No. 07-2686, 2011 U.S. Dist. LEXIS 12603, 2011 WL 382624, at *7 (E.D. Pa. Feb. 4, 2011) (citing Helton v. Hunt, 330 F.3d 242, 247–48 (4th Cir.2003)); Dantzler v. Beard, No. 09-275, 2010 U.S. Dist. LEXIS 107656, 2010 WL 1008294, at *10 (W.D. Pa. Mar. 15, 2010), Plaintiff's claim in this regard fails because a meaningful post-deprivation remedy was available for the loss. *See* Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that intentional deprivations of property do not violate the Due Process Clause if a meaningful post-deprivation

remede for the loss is available). In this regard, the Third Circuit Court of Appeals has held that the Pennsylvania Department of Correction's inmate grievance system "provides an adequate post-deprivation remedy" in satisfaction of the Due Process Clause for prisoners making claims for damage to or loss of personal property. Durham v. Dep't of Corr., 173 F. App'x 154, 157 (3d Cir. 2006); see McEachin v. Beard, 319 F. Supp. 2d 510, 514-15 (E.D. Pa. 2004) (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000). Furthermore, it is not relevant whether the alleged loss of property occurred as the result of negligent or intentional conduct. Hudson, 468 U.S. at 533. Here, such a remedy existed of which Plaintiff took advantage. Therefore, Plaintiff's due process claim should be dismissed because the prison had an administrative grievance process for Plaintiff's loss of the dictionary and he sought redress through that process before seeking redress from this Court.

Plaintiff also claims that his post-deprivation remedy was not meaningful. Defendant Straw confiscated the dictionary, and was then appointed as a Grievance Officer to review that action. Pursuant to DC-ADM 804 prison staff members directly involved in the issue being grieved may not serve as a Grievance Officer for that issue. Specifically, the policy states that "[t]he staff member who serves as the Grievance Officer may not be directly involved or named as the subject of the grievance." (ECF No. 29-1 at 6.) Hence, the Plaintiff argues that the alleged failure to comport with DOC policy directive, deprived him of a meaningful post-deprivation remedy per se. This Court has considered and rejected this exact argument before; most recently in Tarselli v. Harkleroad, CIV.A. 10 - 1266, 2012 WL 603219 at *7 (W.D. Pa. Feb. 23, 2012).

It is not enough to simply allege that the Defendants did not comport with DC-ADM 804, the Plaintiff must allege that the post-deprivation procedure was no longer meaningful.

"Although the plaintiffs allege that the defendants have not adhered to [DC-ADM 804], they have not shown that this post-deprivation procedure was not meaningful." <u>Monroe v. Beard</u>, 536 F.3d 198, 210 (3d Cir. 2008). Plaintiff has failed to identify why Defendant Straw's involvement with the subject of the grievance denied him a "meaningful" post-deprivation remedy. Instead, the Plaintiff simply asserts that the alleged failure to follow DC-ADM 804 denied him a meaningful post deprivation remedy *per se*.

However, "prison regulations do not, in themselves, confer a liberty interest protected by due process, and the failure of prison officials to follow DOC policy does not, in and of itself, result in a violation of due process." <u>Tarselli</u>, 2012 WL 603219 at *7 (citing <u>O'Connell</u> v. <u>Sobina</u>, No. 06-238E, 2007 U.S. Dist. LEXIS 98780, at *45-46 (W.D. Pa. Dec. 3, 2007)). The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. <u>United States v. Jiles</u>, 658 F.2d 194, 200 (3d Cir. 1981); <u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations . . . ."); <u>Culbert v. Young</u>, 834 F.2d 624, 628 (7th Cir. 1987) (the adoption of mere procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process); <u>Shango v. Jurich</u>, 681 F.2d 1091, 1101-02 (7th Cir. 1982) ("[A] state created procedural right is not itself a liberty interest . . . . States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."). Thus, violations of state statutes or rules or regulations that require certain procedures, which are not compelled by the Federal Constitution because there is no liberty interest that those state mandated procedures protect, do not make out a claim under Section

1983. Hayes v. Muller, No. 96-3420, 1996 U.S. Dist. LEXIS 14987, at *20 n.5 (E.D. Pa. Oct. 10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures"); Rowe v. Fauver, 533 F. Supp. 1239, 1246 n.10 (D. N.J. 1982) ("[A] failure by state officials to follow state procedural regulations not independently required by the Constitution fails to state a claim under the Due Process Clause.").

There is no obvious defect with the grievance process afforded to Plaintiff such that the procedure was not meaningful. Plaintiff was afforded multiple opportunities to properly submit his grievance. Plaintiff was also permitted to submit evidence in support of his arguments. Once the grievance was properly submitted Plaintiff was given two independent appeals. Plaintiff did not allege any defect with respect to those appeals. The undersigned is convinced that the Plaintiff had an adequate post-deprivation remedy that was available through the prison grievance system and he has not shown that this remedy was not meaningful.

**3.      Plaintiff fails to state an equal protection claim.**

The undersigned notes that Plaintiff may be attempting to assert an equal protection claim through his response in opposition to Defendants' Motion to Dismiss. *See* (ECF No. 30 at 10.) However, Plaintiff did not assert such a claim in his Amended Complaint and it is improper for him to amend his complaint through his response to Defendants' Motion. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) (quoting Car Carriers, Inc. v. Ford Motor Corp., 745 F.2d 1101, 1107 (7th Cir.1984)). Nevertheless, in the interest of judicial economy and to save an issue from appellate review, the Court will address Plaintiff's equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly-situated be treated alike. *See* City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race, religion, gender or other impermissible classifications. If the action does not involve a suspect classification, the plaintiff may establish an equal protection claim under a "class of one" theory by showing that he or she was intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Accordingly, to state a claim under this theory, the plaintiff must allege that (1) he or she was treated differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Id.

Plaintiff alleges that, Defendant Straw's predecessors and counterparts in other institutions would have permitted the dictionary. Therefore, according to the Plaintiff:

> As all State inmates are in essentially identical situations (confined in State Correctional Institutions and controlled and governed by the DOC and having the same laws and policies state wide), the disparity in treatment described violates [the] equal protection clause, especially when comparing an inmate that received a dictionary just before defendant Straw enacted her policy to the plaintiff being denied his.

(ECF No 30 at 10.) These allegations are clearly insufficient to state a claim for relief under the Equal Protection Clause of the Fourteenth Amendment. In order to set forth a viable equal protection claim, Plaintiff must allege that *Defendant Straw* intentionally treated him differently than other inmates at the institution by prohibiting his receipt of the dictionary for no rational

reason. Plaintiff does not allege that this was the case. Instead, he alleges that other individuals, not named as Defendants in this action, interpreted and applied the policy in a different manner. Moreover, it is clear from Plaintiff's accusations that Defendant Straw had a rational reason for denying Plaintiff receipt of the dictionary – that it did not meet the requirements of DC-ADM 815. As such, the Court should *sua sponte* dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

4.      **Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order should be denied.**

Plaintiff requests a preliminary injunction and temporary restraining order. (ECF No. 34.) He seeks an order directing Defendants to allow him to communicate with Mailroom Supervisors at 26 other DOC facilities across the state using Requests Slips through the interdepartmental mail system. He claims that he has a right to send the requests slips through the interdepartmental mail system and that Defendants are hindering his investigation of this lawsuit by preventing him from doing so. He states that it would take over three months to contact all 26 Mailroom Supervisors by using the eight free envelopes provided to him each month and it would be too costly to purchase the necessary prepaid envelopes from the Commissary. He asserts that it would simply be less time consuming, complicated, and pose less of a security risk to use the interdepartmental mail system. Finally, he seeks an order preventing his transfer to another facility in retaliation for initiating of this lawsuit. Defendants have responded in opposition to Plaintiff's Motion. (ECF No. 36.)

Temporary restraining orders and preliminary injunctions are governed under the same standard. The party seeking preliminary injunctive relief has the burden of demonstrating: (1) a reasonable probability of success on the merits; (2) irreparable harm if the injunction is denied; (3) that the issuance of an injunction will not result in greater harm to the non-moving party; and

(4) that the public interest would best be served by granting the injunction. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997); Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1990). The Court should issue the injunction only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief. Opticians, 920 F.2d at 192 (citing ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)).

The purpose of the preliminary injunction is to preserve the *status quo* until the rights of the parties can be fairly and fully litigated and determined by strictly legal proofs and according to the principles of equity. Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). Thus, the grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances." American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994) (quoting Frank's GMC Truck Center, Inc. v. General Motor Corp., 847 F.2d 100, 102 (3d Cir. 1988)), *cert. denied*, 514 U.S. 1103 (1995). The facts clearly must support a finding that immediate and irreparable injury will result to the movant if preliminary relief is denied. United States v. Stazola, 893 F.2d 34, 37 n.3 (3d Cir. 1990). The plaintiff bears the burden of establishing a "clear showing of irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989), *cert. denied*, 493 U.S. 848 (1989); ECRI, 809 F.2d at 226 (it is not enough to merely show irreparable harm: the plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which cannot be redressed with money damages). Absent a showing of immediate, irreparable injury, the court should deny preliminary injunctive relief. Acierno, 40 F.3d at 655.

Moreover, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982)). Where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." Rizzo v. Goode, 423 U.S. 362, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. Beard v. Banks, 126 S. Ct. 2572, 2578 (2006); Bell v. Wolfish, 441 U.S. 520, 527 (1979).

With the above considerations in mind, the undersigned finds that preliminary injunctive relief or a temporary restraining order is not warranted in this case. First, Plaintiff states that his purpose in attempting to contact the Mailroom Supervisors is to ask them "questions related to his lawsuit." Defendants are correct that such solicitation of information must be done, if at all, pursuant to the rules governing discovery and this case has not reached that stage in litigation. If this case survives the motion to dismiss stage, then Plaintiff will be given an opportunity to conduct discovery and can request leave to contact the Mailroom Supervisors at that time. If the Court deems it permissible, then such request will be granted. However, the undersigned notes that Defendants have raised several objections to the propriety of such contact, but because it is

recommended that Defendants' Motion to Dismiss be granted, it is unnecessary to address such objections at this time.

Finally, Defendants are also correct that Plaintiff has no constitutional right to remain in a particular prison or particular location. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983). Moreover, Plaintiff has not demonstrated that he faces an immediate risk of transfer in retaliation for this lawsuit. His request is based on pure speculation. This is not enough to establish entitlement to the extraordinary relief of an injunction. As such, his motion should be denied.

**5.     Plaintiff's Motion to Amend/Correct should be construed as a Motion to Supplement and should be denied.**

Plaintiff seeks to add a new claim to his complaint. According to Plaintiff, the new claim involves additional parties – two mail room staff members and Secretary Wetzel – but he is not naming those individuals as Defendants "at this time" because he assumes the mail room staff work directly under and were trained by Defendant Straw, and that Wetzel is "sufficiently removed from the situation" so as to be considered "not involved." (ECF No. 41-1 at ¶ 3.)

The new claim involves the denial of "another publication" that occurred in November 2012. (ECF No. 41-1 at ¶ 5.) Plaintiff's attached exhibits reveal that the item confiscated in November 2012 was a "Dick Blick Art Supplies Catalog." (ECF No. 41-2 at 1, 9-13.) In response to his multiple request slips, staff advised Plaintiff that catalogs are not considered "publications" under DC-ADM 803 because their purpose is to advertise or sell merchandise, and, in any event, these catalogs were available to him in the library. (ECF No. 41-2 at 9-13.)

Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplements of pleadings. Fed. R. Civ. P. 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days of serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of the responsive pleading, or 21 days after service of

a dispositive motion under Rule 12, whichever is earlier.  Fed. R. Civ. P. 15(a)(1)(A) and (B).

"In all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Consistent with this policy, leave to amend rests in the discretion of the court and may, when justice so requires, be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962); *see also* Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

Rule 15(d), in turn, governs submission of supplemental pleadings.  That Rule provides that upon the motion of a party, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  A supplemental complaint thus "refers to events that occurred after the original pleading was filed" whereas an amendment to a complaint "covers matters that occurred before the filing of the original pleading but were overlooked at the time."  Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1188-89 (3d Cir. 1979); *see also Moore's Federal Practice* 3d § 15.30 ("Rule 15(d) applies only to events that have occurred since the date of the filing of the pleadings.").  Thus, the purpose of the Rule "is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed."  Carl Zeiss Meditec v. Xoft, Inc., No. 10-308, 2011 U.S. Dist. LEXIS 36785, at *4 (D. Del. April 5, 2011) (citation omitted).  Decisions regarding motions to amend or supplement pleadings rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion.

*See*, *e.g.*, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001). Factors to be considered by the Court in making this determination are the same as those to be considered in motions to amend, including the promotion of a justiciable disposition of the case, the delay or inconvenience in permitting a plaintiff to supplement the complaint, any resulting prejudice to the other parties in the action, and whether the supplement would be futile. Hassoun v. Cimmino, 126 F. Supp. 2d 353, 360 (D. N.J. 2000); Nottingham v. Peoria, 709 F. Supp. 542, 544 (M.D. Pa. 1988).

In this case, it is recommended that proper exercise of the Court's discretion calls for denial of Plaintiff's motion, which this Court should interpret as a motion to supplement because Plaintiff seeks to add additional claim(s) based on an event that occurred following the filing of his complaint. While supplemental complaints are not barred merely because they set forth new claims, "when the matters alleged in a supplemental pleading have no relation to the claim set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified." Wright & Miller, *Federal Practice & Procedure*: Civil § 1506 at 551 (1971). As Defendant correctly point out, the incident that Plaintiff proposes to add has little connection or relation to what is at issue in this case. Indeed, the issue before the Court revolves around the confiscation of Plaintiff's dictionary under DC-ADM 815, the version of the outside purposes policy that was in effect in 2011. By contrast, Plaintiff's new dispute is over receipt of an arts supply catalog that is available in the library and the fact that catalogs are excluded from the DOC's definition of "publications" in DC-ADM 803. The DOC policies at issue are not the same and Plaintiff admits that the individuals who were responsible for making the disputed decisions are different.

Plaintiff even admits that his proposed supplement "could constitute a second lawsuit." (ECF No. 42 at 2.)

As noted by the court in <u>Nottingham</u>, "a court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts and related to a defendant not implicated in the original complaint." <u>Nottingham</u>, 709 F. Supp. at 544 (citations omitted). Because Plaintiff has already been granted one opportunity to amend, and because his supplement concerns a new issue regarding a different policy than the one currently in dispute and decisions made by different defendants, Plaintiff's motion should be denied. Moreover, it is clear that any supplement would be futile as numerous courts have upheld similar catalog policies when those items are otherwise made available to the inmate. *See*, *e.g.*, <u>Lepine v. Brodeau</u>, No. 97-72, 1999 WL 814277, at *10-11 (D. N.H. Sept. 30, 1999); <u>Allen v. Wood</u>, 970 F. Supp. 824 (E.D. Wash. June 9, 1997).

## III.    <u>CONCLUSION</u>

For the reasons stated above, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 27) be granted, that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 34) be denied, and that Plaintiff's Motion to Amend/Correct (ECF No. 41) be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: January 8, 2013

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:    David Bohm
GV-8861
SCI Cresson
P.O. Box A
Cresson, PA 16699-0001
*Via U.S. Postal Mail*

Counsel of Record
*Via Electronic Mail*